| | | |
|---|---|---|
| **HUNTER HIDALGO, PH.D.** | * | **NO. 2024-C-0609** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE ON BEHALF OF LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER–NEW ORLEANS; ET AL.** | * <br> * <br> * <br> * * * * * * * | **FOURTH CIRCUIT** <br><br> **STATE OF LOUISIANA** |

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-07358, DIVISION "F-14"
Honorable Jennifer M. Medley, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Dale N. Atkins, Judge Karen K. Herman)

Liz Murrill, Attorney General
Phyllis E. Glazer, Assistant Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
LITIGATION DIVISION
1885 N. Third Street, 3rd Floor
Baton Rouge, Louisiana 70802

Darren A. Patin
Special Assistant Attorney General
3445 North Causeway Blvd., Suite 800
Metairie, Louisiana 70002

Dennis J. Phayer
Special Assistant Attorney General
5213 Airline Drive
Metairie, Louisiana 70001

COUNSEL FOR RELATORS, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College on Behalf of Louisiana State University Health Sciences Center-New Orleans ("LSUHSC-NO"); Dr. Steve Nelson in his official capacity as the Interim Chancellor of LSUHSC-NO; Dr. Richard DiCarlo in his official capacity as the Interim

Dean of the School of Medicine at LSUHSC-NO; Dr. Demetrius J. Porche in his official capacity as the Interim Vice Chancellor for Academic Affairs at LSUHSC-NO; and Dr. Angela Amedee in her official capacity as the Interim Dean of the School of Graduate Studies at LSUHSC-NO

Ellie T. Schilling
Benjamin O. Flaxenburg
SCHONEKAS, EVANS, MCGOEY & EACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112

COUNSEL FOR RESPONDENT, Hunter Hidalgo, PhD


**WRIT GRANTED; RELIEF DENIED; STAY LIFTED**
**SEPTEMBER 25, 2024**

DNA

PAB

KKH


This civil matter concerns a dispute regarding a medical student's residency application. Relators are the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("Board") on Behalf of Louisiana State University Health Sciences Center-New Orleans ("LSUHSC-NO"); Dr. Steve Nelson ("Dr. Nelson") in his official capacity as the Interim Chancellor of LSUHSC-NO; Dr. Richard DiCarlo ("Dr. DiCarlo") in his official capacity as the Interim Dean of the School of Medicine at LSUHSC-NO; Dr. Demetrius J. Porche ("Dr. Porche") in his official capacity as the Interim Vice Chancellor for Academic Affairs at LSUHSC-NO; and Dr. Angela Amedee ("Dr. Amedee") in her official capacity as the Interim Dean of the School of Graduate Studies at LSUHSC-NO (collectively "Defendants"). They seek review of the trial court's September 24, 2024 judgment, which granted an "Emergency Motion for Contempt, Attorney's Fees, and Court Costs for Violation of Permanent Injunction and Judgment of February 7, 2024" ("Emergency Contempt Motion") filed by Respondent, Hunter Hidalgo, PhD ("Dr. Hidalgo"). For the following reasons, we grant Relators' writ application; deny relief; and lift the stay order issued by this Court.

1

## DISCUSSION

On August 16, 2022, Dr. Hidalgo, filed a "Verified Petition for Injunctive Relief and Damages" ("Petition") in Orleans Parish Civil District Court. Therein, Dr. Hidalgo named the following as defendants: the Board; Dr. Steve Nelson; Dr. DiCarlo; Dr. Porche; and Dr. Amedee (hereinafter "Defendants"). In his Petition, Dr. Hidalgo alleged that Defendants' handling of scientific misconduct allegations regarding his thesis dissertation research both materially and prejudicially deviated from LSUHSC-NO's stated policies and procedures and from the requirements of federal law, thereby breaching LSUHSC-NO's obligations to him and violating his due process rights.

Ultimately, the matter proceeded to a jury trial, beginning on January 8, 2024, and ending on February 5, 2024, after which the jury rendered a verdict in favor of Dr. Hidalgo. Then, on February 7, 2024, the trial court signed a judgment in accordance with the jury's verdict. That judgment ordered, in pertinent part, that Defendants were prevented from revoking Dr. Hidalgo's PhD; were compelled to re-enroll Dr. Hidalgo in the School of Medicine at LSCHSC-NO; and were compelled to vacate the finding of scientific misconduct and expunge Dr. Hidalgo's record and transcript of the finding and associated sanction.

Subsequently, on September 22, 2024, Dr. Hidalgo filed his Emergency Contempt Motion. Therein, Dr. Hidalgo contended that the trial court's "[j]udgment and permanent injunction [were] . . . abundantly clear that Dr. Hidalgo's educational record and transcript must be vacated and expunged of the misconduct findings and sanction associated with [his PhD dissertation] case." Nonetheless, according to Dr. Hidalgo's Emergency Contempt Motion, he learned

that his pending application to medical residency programs, which he referred to as the "MSPE,"[1] stated, in relevant part:

> **Attainment of Professional Standards:**
> With the exception of the incident described below, Hunter has met professional standards.
> []
> In April, 2021, Hunter published his PhD thesis containing data that is statistically unlikely and cannot be replicated upon peer review. The standards of professionalism expected of a physician would require him, as the sole author, to retract the thesis and re-run the data so that the thesis can be published with data that can be replicated upon peer review. As of the date of this writing, the publication has not been retracted or re-run.

Dr. Hidalgo contended that the above notation was "improper" and was "obviously taken from [his] educational records, which [LSUHSC-NO] . . . failed to expunge in direct violation and defiance of the permanent injunction and [the trial court's] [February 7, 2024] [j]udgment." Dr. Hidalgo further asserted that LSUHSC-NO "should be held in contempt and sanctioned for . . . willful failure to abide by the Permanent Injunction and Judgment of th[e] [c]ourt dated February 7, 2024."

On September 23, 2024, the trial court conducted a hearing on Dr. Hidalgo's Emergency Contempt Motion,[2] after which the trial court ordered the Defendants and their attorneys to amend Dr. Hidalgo's MSPE by 4:00 p.m. that day for the court's review. In response, Defendants amended the MSPE by removing all of the challenged language but left the section titled "Attainment of Professional Standards" blank. Counsel for Dr. Hidalgo objected to this and argued to the trial

---

[1] As we have previously explained, "[t]his Court can take judicial notice of government websites." *State v. Debose*, 2024-0217, p. 4 (La. App. 4 Cir. 6/13/24), 390 So.3d 971, 975 (citing *McClendon v. Sewerage & Water Bd. of New Orleans*, 2023-0531, p. 1 (La. App. 4 Cir. 4/5/24), 390 So.3d 774, 778). We take judicial notice of the National Library of Medicine's website that "MSPE" stands for "Medical Student Performance Evaluation." *Medical Student Performance Evaluation (MSPE) 2017 Task Force Recommendations as Reflected in the Format of 2018 MSPE*, NATIONAL LIBRARY OF MEDICINE, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6699527/ (Aug. 2019).

[2] The transcript of the September 23, 2024 hearing is not in the record before this Court.

court—via an email to the trial court judge's law clerk—that the trial court had actually ordered the Defendants to affirmatively state that "[Dr. Hidalgo] has met professional standards." The trial court agreed with counsel for Dr. Hidalgo and, at 10:00 a.m. on September 24, 2024, signed another judgment. In pertinent part, that judgment granted Dr. Hidalgo's Emergency Contempt Motion; held Defendants and their counsel in contempt of court;[3] and further ordered Defendants to amend Dr. Hidalgo's MSPE by deleting all of their original language under the heading "Attainment of Professional Standards" except for the inclusion of the sentence "[Dr. Hidalgo] has met professional standards."

Later that same day, on September 24, 2024, Defendants (hereinafter "Relators") filed the above-captioned application for expedited supervisory review of the trial court's September 24, 2024 judgment. In their writ application to this Court, Relators assert the following assignments of error:

1. The trial court erred by requiring [Relators] to affirmatively state that "[Dr. Hidalgo] has met professional standards" even though that statement is inaccurate.

2. The trial court erred by holding [Relators] and three of their attorneys in contempt.

   a. The trial court erred by granting [Dr. Hidalgo]'s motion for contempt without complying with La. [C.C.P. art.] 224.

   b. The trial court erred by concluding [Relators] are in contempt for violating the Trial Judgment, which did not contain a prohibitory injunction regarding the current or ongoing validity of [Dr.] Hidalgo's dissertation.

---

[3] Importantly, we note that the September 24, 2024 judgment "suspended" the provision holding Defendants and their counsel in contempt of court to afford Defendants the opportunity to come into compliance with that judgment and with the February 7, 2024 permanent injunction and judgment. Additionally, the trial court selected October 3, 2024, as the date for a full contempt hearing on this issue.

Relators request that this Court reverse the trial court's September 24, 2024 judgment and deny Dr. Hidalgo's Emergency Contempt Motion in its entirety.

In his opposition filed with this Court on September 24, 2024, Dr. Hidalgo counters that the trial court properly ordered Relators to comply with and did not abuse its discretion in compelling Relators to comply with the February 7, 2024 permanent injunction and judgment. In particular, Dr. Hidalgo asserts that the improper notation in his MSPE that he has purportedly not met the professional standards of LSUHSC-NO is for the exact reason that gave rise to his underlying case, i.e., purported issues with the data underlying his PhD dissertation. Accordingly, as Dr. Hidalgo asserts, Relators' inclusion of the notation in his MSPE is Relators "deliberately and willfully thwart[ing] the Permanent Injunction and Final Judgment —which expressly ordered the vacatur of misconduct findings related to Dr. Hidalgo's [PhD] and the expungement of his record related to same in order to remedy the due process violations that he sustained."

We agree with Dr. Hidalgo. Regarding Relators' first assignment of error, the February 7, 2024 judgment's vacatur and expungement order equates to a legal finding of no misconduct on Dr. Hidalgo's part. Relators have provided no other reason for refusing to certify that Dr. Hidalgo met the professional standards, such that he has—by logical extension—attained the professional standards. Rather, the only "exception" Relators have to stating that Dr. Hidalgo has met the professional standards is their attempt to reference an incident that the trial court ordered vacated and expunged in accordance with a jury verdict rendered after a twenty-one day trial. Despite Relators' protestations, the statement that the trial court has ordered Relators to place on Dr. Hidalgo's MSPE—"[Dr. Hidalgo] has met professional standards"—is not inaccurate or untrue in light of the jury's verdict and the trial court's subsequent judgment. Moreover, because the trial court suspended the contempt finding and has scheduled a contempt hearing, we find

5

Relators' arguments in their second assignment of error to be misplaced and pretermit discussion of same. Accordingly, we grant Relators' writ application but deny the relief therein sought.

## ANCILLARY MATTER

Before concluding this Opinion, we also note that Relators' writ application did not contain a signed order setting the return date; and, in their writ application, Relators contended that the trial court had not yet signed an order setting the return date at the time they filed their request for expedited supervisory review with this Court. Because Relators' writ application did not include the signed order setting the return date, this Court determined that it failed to comply with Rules 4-3 and 4-5 of the Uniform Rules of the Courts of Appeal.[4] Accordingly, on September 24, 2024, we ordered the trial court to sign an order setting the return date. Further, we ordered Relators and the trial court to file the signed order setting the return date with the Clerk of this Court by 7:00 p.m. that same day, September 24, 2024. In response, we received correspondence from the trial court at 6:22 p.m. that day, which stated:

> I understand a Notice [of Intent] was e-filed at some time after 3 [p.m.] today in the above case. By the time the last staff member of

---

[4] Rule 4-3 of the Uniform Rules of the Courts of Appeal provides, in pertinent part:

> The judge who has been given notice of intention as provided by Rule 4-2 shall immediately set a reasonable return date within which the application shall be filed in the Court of Appeal. The return date in civil cases shall not exceed 30 days from the date of notice of the judgment, as provided in La. C.C.P. art. 1914. . . . In all cases, the judge shall set an explicit return date; a Court of Appeal shall not infer a return date from the record.

A writ application must "contain documentation of the return date and any extensions thereof." Rule 4-3, Uniform Rules, Courts of Appeal.

Rule 4-5 of the Uniform Rules of the Courts of Appeal lists the items that must be contained in a writ application, including "the notice of intent and return date order required by Rules 4-2 and 4-3." Rule 4-5(C)(11), Uniform Rules, Courts of Appeal.

6

the division left today, around 5 [p.m.], we had not received the Notice from the clerk's office. Anything that is "e-filed" is printed on pink paper in the clerk's office and then walked to the divisions twice daily (10 [a.m.] and 3 [p.m.]). The division will not receive the pleading until it is physically walked down to us by a member of the clerk's e-file division. As soon as it is brought to the division I can sign it. If I am unavailable, I will approve it for duty to sign.

Additionally, we received correspondence from counsel for Relators at approximately 7:15 p.m. on September 24, 2024, which explained:

I called the [trial court] judge's mobile phone and left a voicemail message notifying her that the [Louisiana] Fourth Circuit [Court of Appeal] had issued an order. I did not speak with the [trial court] judge.

I also sent an email to the trial [court] judge's law clerk . . . and copied all counsel, at approximately 6:10 p.m. inquiring as to whether they were aware of the Court's order.

At 6:45 p.m. [the trial court judge's law clerk] responded to the email and informed all counsel that the trial court had received the Court order. I responded to that email shortly thereafter and inquired as to whether the trial court had signed the order setting the return date. As of 7:11 p.m., I have neither received a response to that inquiry nor received a copy of the signed order.

As of the time this Opinion is being handed down (at approximately 11:00 a.m. on September 25, 2024), this Court still has not received the signed order setting the return date.

Though Rule 4-3 of the Uniform Rules of the Courts of Appeal states that a writ application "*shall* contain documentation of the return date and any extensions thereof," that Rule further states that "any application that does not contain this documentation *may* not be considered by the Court of Appeal." (Emphasis added.) This Court has held that the "use of the permissive 'may'" in Rule 4-3 "does not prohibit this Court from exercising supervisory jurisdiction." *State in Interest of L.R.*, 2021-0141, p. 4 (La. App. 4 Cir. 3/25/21), 314 So.3d 1139, 1142. Further, this Court has explained that if "a relator makes a timely and genuine attempt to obtain the [trial court] judge's signature on the order seeking review, the supervisory court should not refuse to consider writ." *Id.* In the matter *sub judice*,

Relators stated in their writ application that they e-filed their Notice of Intent and request for a return date with the trial court sometime prior to 2:00 p.m. on September 24, 2024. According to Relators, the trial court then scheduled a "status conference" for 2:00 p.m. for that same day but had not appeared at the conference as of 3:03 p.m. that day, whereupon Relators proceeded to file their request for expedited supervisory review with this Court at 3:12 p.m. In response to this Court's Order to produce the signed order setting the return date, counsel for Relators called the trial court judge's cellphone and emailed the trial court judge's law clerk prior to the deadline in our Order, and then counsel for Relators notified this Court of these efforts. We find that this constitutes "a timely and genuine attempt to obtain the [trial court] judge's signature on the order seeking review." *State in Interest of L.R.*, 2021-0141, p. 4, 314 So.3d at 1142. Thus, in light of the permissive language in Rule 4-3 and this Court's prior holding in *State in Interest of L.R.*, we concluded that we should not refuse to consider Relators' writ application despite the lack of a signed order setting the return date.

## DECREE

For the foregoing reasons, we grant Relators' writ application but deny relief. Additionally, we lift the stay ordered by this Court on September 24, 2024. Relators are ordered to comply with the instructions contained in this Opinion, as well as the trial court's September 24, 2024 judgment.

**WRIT GRANTED; RELIEF DENIED; STAY LIFTED**